**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER HAYWOOD,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 18 C 7549** |
| | ) | |
| **MATTHEW SWALLS, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Following a jury trial in the Circuit Court of Cook County, Christopher Haywood was convicted of one count of being an armed habitual criminal and two counts of possessing a controlled substance with intent to deliver. He has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. For the reasons stated below, the Court denies the petition.

**Background**

The following information is drawn from the Illinois Appellate Court's opinions in Haywood's case and the record of the trial proceedings.

On May 28, 2009, Chicago Police Officer Mireya Lipsey requested a warrant to search Christopher Haywood and the house where he resided. In the warrant affidavit, she stated that an individual (referred to as J. Doe) told her that, on May 27, 2009, he watched another man, nicknamed "Da Da," purchase heroin from someone named Chris who lived at a particular address in Chicago. According to the affidavit, J. Doe

reported that Da Da gave him the heroin, and he resold it on the street. J. Doe told Lipsey that he had been buying heroin through Da Da, who had gotten it from Chris, multiple times each week for the previous four months.

Lipsey's affidavit reflects that, by searching a state database, she found a photograph of Haywood and a record indicating that, in connection with prior arrests, he had listed as his primary residence the address J. Doe had identified as Haywood's. In the affidavit, Lipsey stated that she showed the photograph to J. Doe, and he identified Haywood as the person from whom he had purchased heroin. She stated that she and J. Doe went to the address, and he confirmed that it was the place where he had purchased the heroin. They both signed the complaint for the search warrant, J. Doe appeared before a judge for questioning, and the judge issued the warrant.

Police executed the warrant on May 28, 2009. They arrested Haywood and seized two handguns, a shotgun, ammunition, heroin, cocaine, bundles of U.S. currency, a digital scale, drug packaging, and several pieces of U.S. mail addressed to him. He was charged with one count of being an armed habitual criminal and three counts of possessing a controlled substance with intent to deliver.

Before his trial, Haywood, through counsel, filed a motion pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to quash the search warrant and suppress evidence seized as a result of the search. The trial court heard oral argument on the motion and then denied it. The court found that J. Doe's signature on the warrant complaint increased its reliability; the witnesses Haywood presented to challenge the warrant affidavit—himself, his brother, and Da Da—were biased; and the information in their affidavits could be read as corroborating, rather than contradicting, the information that

2

J. Doe gave to Officer Lipsey.  Hr'g Tr., Resp.'s Mot., Ex. C (dkt. no. 18-3) at 19:6–27:10.

Haywood subsequently asked to proceed *pro se*.  At some point before trial, he again moved to suppress the evidence seized pursuant to the warrant, and the trial court denied the motion.  Haywood represented himself at his jury trial.  As indicated, the jury found him guilty on the charge of being an armed habitual criminal and two charges of possessing a controlled substance with intent to delivery.  The jury found him not guilty on the third charge of possessing a controlled substance with intent to deliver.

Haywood filed a motion for a new trial, and the court denied it.  (The record before this Court does not reflect the arguments he raised in the new motion or the court's reasons for denying it.)  The trial judge sentenced Haywood to concurrent terms of twelve years, seven years, and five years for his respective convictions, along with three years of mandatory supervised release on the armed habitual criminal charge.

Haywood, represented by counsel, appealed his conviction.  He argued that the trial court erred in denying his request for a *Franks* hearing and that one of his convictions for possession of a controlled substance should be vacated due to insufficient evidence.  He also sought a remand for resentencing on the armed habitual criminal charge, as well as a correction to his mittimus.  The appellate court affirmed the convictions and sentence but ordered the mittimus corrected.  *People v. Haywood*, 2014 IL App (1st) 121448-U, ¶ 50.  In particular, the court found that the trial court properly denied Haywood's request for a *Franks* hearing because Haywood's "affidavits were from biased and interested parties" and "the statements in the affidavits were vague and did not preclude the possibility that the drug transaction occurred on May 27, 2009 as

3

described by the confidential informant." *Id.* ¶ 28. The court also found that there was sufficient evidence of J. Doe's reliability because he appeared under oath before the judge who issued the warrant. *Id.* ¶ 31. In addition, the court found that Lipsey corroborated J. Doe's information by showing him a photograph of Haywood to confirm Haywood's identity and driving him to Haywood's home to confirm the location of the alleged drug transaction. *Id.* Haywood did not file a petition for leave to appeal (PLA) in the Illinois Supreme Court.

In September 2014, Haywood filed a *pro se* petition for post-conviction relief in the state trial court. He attached to the petition new evidence: an affidavit from Anthony Jackson, who averred that he was the J. Doe informant, and a notarized questionnaire completed by Jackson. In these documents, Jackson stated that Officer Lipsey arrested him, searched him, and found bags (presumably containing drugs) on him. He stated that Lipsey offered him a leniency deal for implicating others in crimes, so he lied to her and said he bought drugs from Haywood on or in the months leading up to May 27, 2009. Haywood argued that the prosecution committed a *Brady* violation by failing to disclose that Lipsey had arrested Jackson and given him a leniency deal. He also argued that he was entitled to a *Franks* hearing because, he contended, Jackson's affidavit and questionnaire, together with affidavits from Haywood, his brother, and Da Da, showed that Lipsey violated his Fourth Amendment rights by knowingly or with a deliberate disregard for the truth making false statements in her warrant affidavit.

The trial court summarily dismissed the post-conviction petition at the first stage. With regard to the alleged *Brady* violation, the court found that the State had no duty to

disclose information about Jackson and, regardless, Haywood had not shown that the disclosure resulted in prejudice to him or that he could refute the presumed validity of the warrant. In reaching that decision, the court considered, among other things, the facts that "Jackson had appeared before the judge issuing the search warrant, was available for questioning by the judge, swore to the allegations in the complaint, and signed the complaint." Resp.'s Mot., Ex. K (dkt. no. 18-11) at 4. The court found that Haywood's Fourth Amendment claim was barred by the doctrine of *res judicata*. Haywood filed a motion to reconsider, which the trial court denied.

Separately, Haywood moved the trial court for post-conviction forensic testing of four bags of heroin. The court denied the motion.

Represented by counsel, Haywood appealed, arguing that he had raised non-frivolous claims in his post-conviction petition because Jackson's affidavit and questionnaire showed that he was entitled to a *Franks* hearing and that, under state law, he was also entitled to post-conviction forensic testing. The state appellate court rejected both arguments and affirmed the trial court's rulings. The court concluded that the trial court erred in finding that Haywood's Fourth Amendment claim was barred by *res judicata. Id.* ¶ 35. The court nonetheless affirmed the trial court's denial of Haywood's post-conviction petition on the ground that he had "produced no evidence that Officer Lipsey herself gave false information in the application for search warrant or that she knowingly or recklessly used false information from her confidential informant in obtaining the search warrant." *Id.*; *see also id.* at 40, 42. In reaching that conclusion, the appellate court considered a number of facts, including Jackson's appearance "before the magistrate judge, who was able to determine his credibility," *id.* ¶ 38; the

statements in Jackson's affidavit and questionnaire, *id.* ¶ 40; and the "measures Lipsey took to corroborate the information allegedly provided by Jackson," as described in the warrant affidavit, *id.* The Court also affirmed the trial court's denial of Haywood's motion for forensic testing. *Id.* ¶ 55.

Haywood then filed a petition for leave to appeal to the Illinois Supreme Court, which that court denied. *People v. Haywood*, 108 N.E.3d 844 (Ill. 2018) (table).

Haywood has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 before this Court. In July 2019, after the parties had submitted their briefs but while his petition was still pending, Haywood was released from prison on parole.

## Discussion

A state prisoner is entitled to a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[A] federal court may grant habeas relief after a state-court adjudication on the merits only when that decision (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Schmidt v. Foster*, 911 F.3d 469, 476-77 (7th Cir. 2018) (quoting 28 U.S.C. §§ 2254(d)(1), (2)).

### A.    Procedural default

The Court starts by considering whether Haywood procedurally defaulted any of his federal claims.[1] "Before pursuing habeas relief in federal court, a state prisoner

---

[1] The Court notes that the State has not argued Haywood's release from prison on

must exhaust available state-court remedies" and fairly present his federal claims to the state courts "so that the state has a 'fair opportunity to consider' the issues 'and to correct [the] asserted constitutional defect.'"  *Reynolds v. Hepp*, 902 F.3d 699, 705 (7th Cir. 2018) (quoting *Picard v. Connor*, 404 U.S. 270, 275–76 (1971)), *cert. denied*, 140 S. Ct. 160 (2019).  "Fair presentation generally requires the petitioner to raise both the operative facts and controlling legal principles in the state courts."  *Id.*  A petitioner has procedurally defaulted a federal claim where he has failed to fairly present it through "at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings."  *Clemons v. Pfister*, 845 F.3d 816, 819 (7th Cir. 2017).

Respondent contends that Haywood procedurally defaulted his claims that the warrant was seized pursuant to a suggestive identification process and that the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose impeaching information.  The Court addresses each contention in turn.

### 1.    Suggestive identification process

Haywood contends that Lipsey, by showing Jackson an unduly suggestive photograph of Haywood, used an improper process to identify him and obtain the warrant.  Respondent contends, in a footnote, that Haywood procedurally defaulted this claim because he did not raise it in the state appellate court but does not say specifically whether it is contending that he did not raise the claim in the state appellate court on direct appeal, on appeal from the dismissal of his post-conviction petition, or

---

parole moots his petition.  Regardless, that argument would lack merit.  *See, e.g.*, *United States v. DeKelaita*, 391 F. Supp. 3d 866, 870 (N.D. Ill. 2019).

both. But because respondent then asserts that Haywood "cannot rely on the alleged ineffective counsel in his *postconviction appeal* to provide the 'cause' necessary to overcome the default[]," Resp.'s Mem. (dkt. no. 17) at 7 n.1 (emphasis added), it appers respondent is contending only that Haywood did not raise the claim in his post-conviction appeal. For his part, Haywood appears to concede that he did not raise the issue relating to the suggestive photograph in his post-conviction appeal. He contends, however, that he did not raise the issue because he did not have access to the allegedly suggestive photograph, and he essentially explains that his contentions about the photograph would bolster his Fourth Amendment claim.

In determining whether a petitioner fairly presented his claim to the state courts, "federal courts should avoid hypertechnicality." *Chambers v. McCaughtry*, 264 F.3d 732, 738 (7th Cir. 2001) (internal quotation marks omitted); *see also Ward v. Jenkins*, 613 F.3d 692, 697 (7th Cir. 2010) (no procedural default where petitioner's post-conviction motion before the state court "did not provide a highly detailed factual basis" for his claim and he developed his argument before the federal court more than he did before the state court; the substance of the claim before both courts was the same). "A petitioner may reformulate his claims as long as the substance of the argument remains the same." *Chambers*, 264 F.3d at 738.

Haywood, as indicated, has asserted that the issue concerning the allegedly suggestive photograph provides support for his Fourth Amendment claim. In short, he contends that his Fourth Amendment rights were violated in part because of Officer's Lipsey's suggestive identification procedure. And even respondent asserts that, regardless of how they are framed, Haywood's contentions about the allegedly

suggestive identification procedure are part of his Fourth Amendment claim. Resp.'s Mem. (dkt. no. 17) at 6 ("Petitioner's attempt to recast his Fourth Amendment challenge as a *Brady* violation or a suggestive identification procedure should not allow him to skirt [case law on the Fourth Amendment].").

Haywood fairly presented his Fourth Amendment claim to the state post-conviction appellate court because he alerted that court to his contention that his constitutional rights had been violated by the allegedly improper process through which Officer Lipsey obtained the information supporting her affidavit for the search warrant. He did so by asserting that his rights were violated because Lipsey knowingly or with reckless disregard for the truth included false information in her warrant affidavit. Though Haywood added to his federal petition an additional fact about Officer Lipsey's reliance on an unduly suggestive photograph, the overall substance of his claim is the same as the claim he asserted in the state postconviction appellate court. Accordingly, Haywood has not procedurally defaulted the claim, and, even if he did, as the Court will explain later in this opinion, he cannot prevail on its merits.

### 2. *Brady* claim

Haywood asserted a *Brady* claim in his post-conviction petition before the trial court but not in his appeal of the denial of that petition or in his PLA. Specifically, he alleged that the prosecution failed to disclose material information—about, among other things, Lipsey's arrest of Jackson and the leniency deal between them—that he might have used, in moving for a *Franks* hearing and/or to suppress evidence, to impeach Lipsey's credibility. *See, e.g.*, *Socha v. Richardson*, 874 F.3d 983, 987–88 (7th Cir. 2017) (habeas corpus petitioner may be entitled to relief for *Brady* violation if he can

show that the evidence at issue—which can include impeachment evidence—was favorable, suppressed, and material to his defense).

Haywood concedes that he procedurally defaulted his *Brady* claim. To be sure, the Seventh Circuit "will not penalize" a petitioner for presenting an issue to a federal court "that he was unable to present to the state courts because of the state's misconduct," including its withholding of material information. *Crivens v. Roth*, 172 F.3d 991, 995 (7th Cir. 1999). But there is no basis to say that Haywood was unable to present the claim to the appellate court reviewing the denial of his post-conviction petition; he had raised the claim before the trial court in his post-conviction petition. Thus he procedurally defaulted it by failing to assert it on appeal or in his PLA.

Haywood asks the Court to excuse his default. "Procedural default may be excused . . . where the petitioner demonstrates either (1) 'cause for the default and actual prejudice' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Thomas v. Williams*, 822 F.3d 378, 386 (7th Cir. 2016) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Haywood contends that his procedural default should be excused on both grounds.

### a. Cause

Haywood asserts that he can show cause for his default of the *Brady* claim. He initially contended that his counsel for his state post-conviction appeal caused the default by failing to assert his *Brady* claim on appeal. But, as Haywood concedes in his reply brief, "the ineffective assistance of postconviction counsel is not cause to excuse a defaulted claim that appellate counsel was constitutionally ineffective." *McGhee v. Watson*, 900 F.3d 849, 852 (7th Cir. 2018).

Haywood also contends that his appellate counsel was ineffective because she did not raise his *Brady* claim on direct appeal. For a claim of ineffective assistance of counsel to excuse a procedural default, the underlying ineffectiveness claim must itself be preserved. *Richardson v. Lemke*, 745 F.3d 258, 272 (7th Cir. 2014). Respondent has contended that Haywood cannot overcome his procedural default based on the alleged ineffectiveness of his post-conviction appellate attorney. But respondent has never asserted a procedural default defense on Haywood's contention that his counsel on direct appeal was ineffective; respondent does not address that contention at all. Thus respondent has waived or forfeited a procedural default defense as it pertains to the ineffectiveness of Haywood's counsel on direct appeal. *See Kaczmarek v. Rednour*, 627 F.3d 586, 593 (7th Cir. 2010) ("[A] State may implicitly waive the contention that a claim is procedurally defaulted by addressing the merits of that claim while asserting that another is procedurally barred." (internal quotation marks omitted)); *see also Perruquet v. Briley*, 390 F.3d 505, 517 (7th Cir. 2004) (the State's "silence on the subject of procedural default is normally not enough, standing alone, to demonstrate the intent to relinquish the defense that is the essence of true waiver" but can indicate that the state has forfeited the defense). Respondent arguably has also waived or forfeited his corresponding argument that Haywood's ineffectiveness of appellate counsel claim cannot excuse a procedural default. Regardless, as the Court discusses later in this opinion, Haywood's ineffectiveness of appellate counsel claim lacks merit. Accordingly, it cannot serve to excuse his procedural default.

Haywood next contends that he can show cause for his failure to raise the *Brady* violation because the prosecution withheld, among other things, evidence concerning

Jackson's unreliability and the deal between Lipsey and Jackson, which he contends impeded his and counsel's efforts to litigate his case. But if anything, this explains why Haywood has a *Brady* claim to assert, not why he has cause to excuse his procedural default of that claim. To show cause sufficient to excuse a procedural default, a petitioner must show that "an objective factor external to the defense," which cannot be fairly attributed to him, impeded his ability to present the claim to the state courts. *Crutchfield v. Dennison*, 910 F.3d 968, 973 (7th Cir. 2018), *cert. denied*, 139 S. Ct. 1587 (2019). Haywood does not attempt to explain how any external, objective factor impeded his ability to assert the *Brady* claim in his post-conviction appeal or PLA.

For these reasons, Haywood has not shown cause sufficient to excuse his procedural default of the *Brady* claim.

### b. Fundamental miscarriage of justice

Haywood also contends that the Court should excuse his procedural default because a decision not to do so would result in a fundamental miscarriage of justice. "To demonstrate a fundamental miscarriage of justice, a petitioner must show that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent' such that 'it is more likely than not that no reasonable juror would have convicted [him] in the light of [] new evidence.'" *Thomas*, 822 F.3d at 386–87 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). This is "an extremely high bar." *McDowell v. Lemke*, 737 F.3d 476, 483 (7th Cir. 2013).

Haywood contends that new evidence—Jackson's affidavit and the corresponding questionnaire—demonstrate his actual innocence. The affidavit and questionnaire concern the interaction between Jackson and Officer Lipsey, specifically

the lies that Jackson allegedly told Lipsey and his contention that he did not buy drugs from Haywood on May 27, 2009. These materials serve to challenge Lipsey's credibility and the validity of the search warrant, not to establish that Haywood is actually innocent of the crimes for which he was convicted. *See id.* at 483–84 (evidence impeaching a detective's credibility was insufficient to clearly and convincingly establish a petitioner's innocence). The affidavit and questionnaire provide no information regarding whether Haywood was actually innocent of being an armed habitual criminal or possessing drugs with intent to deliver on May 28, 2009. They do not show that "it is more likely than not that no reasonable juror would have convicted" Haywood of those crimes. *Thomas*, 822 F.3d at 386–87 (quoting *Schlup*, 513 U.S. at 327). Therefore, Haywood's claim of actual innocence is insufficient to excuse the procedural default of his *Brady* claim.

In sum, Haywood has procedurally defaulted his *Brady* claim but not his claim concerning the use of a suggestive identification photograph. The Court will proceed to address the merits of Haywood's claims.

### B.     Fourth Amendment claims

In asserting his first and second grounds for relief, Haywood argues that the search warrant was invalid and thus that the trial court should have suppressed the evidence seized pursuant to the warrant. Specifically, he contends that Lipsey's interaction with Jackson, which served as a primary basis for the warrant, involved an improper process: she coerced Jackson into framing Haywood; acted unreasonably or recklessly in trusting Jackson; showed him an unduly suggestive photograph of Haywood; did not corroborate his statements; and omitted facts regarding his

unreliability, her arrest of him, and the alleged leniency deal between them from her affidavit in support of the search warrant. In addition, Haywood contends that Lipsey knowingly, or with reckless disregard for the truth, included false information in her affidavit in support of a search warrant. Haywood points to Jackson's affidavit and the corresponding questionnaire—in which Jackson stated that Lipsey offered him a leniency deal and that he lied to her—as evidence that Lipsey knowingly or recklessly relied on and asserted false information in her affidavit.

"[A] state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial" where the state courts "provided an opportunity for full and fair litigation of [his] Fourth Amendment claim." *Stone v. Powell*, 428 U.S. 465, 495 (1976). A petitioner has had such an opportunity where "(1) he clearly apprised the state court of his Fourth Amendment claim along with the factual basis for that claim, (2) the state court carefully and thoroughly analyzed the facts, and (3) the court applied the proper constitutional case law to those facts." *Miranda v. Leibach*, 394 F.3d 984, 997 (7th Cir. 2005).

Haywood argues that he is entitled to federal habeas corpus relief based on his Fourth Amendment claim because the state courts did not consider newly discovered and previously unavailable evidence—namely, Jackson's affidavit and questionnaire reflecting that he lied to Officer Lipsey—and thus he did not have a full and fair opportunity to litigate his claim. He contends that the evidence has revealed material impeaching information that the prosecution never disclosed to him. He asserts this new evidence was directly pertinent to the veracity of the information used as the basis to issue the search warrant and thus could have changed the outcome of his motion to

suppress.

To be sure, the courts at trial and on direct appeal did not consider that evidence. The evidence was not in the record before those courts, because Haywood obtained it while his direct appeal was pending. But the Supreme Court did not say in *Stone* that the full and fair hearing must occur during the trial or on direct appeal. *See Stone*, 428 U.S. at 489–95. Haywood has not cited, and the Court has not found, any cases suggesting it must.

Haywood had an opportunity to present his Fourth Amendment claim, including the new evidence, to the state courts on post-conviction review. And he took advantage of that opportunity, presenting the new evidence and a version of his current claim in his *pro se* post-conviction petition. He also argued the claim, including the new evidence, in his post-conviction appeal, asserting that his due process and Fourth Amendment rights were violated due to Officer Lipsey's alleged disregard for the truth in preparing the search warrant complaint. To the extent that claim is not identical to his present Fourth Amendment claim, that does not preclude a finding that he received a full and fair opportunity to litigate the present claim. *See Bostick v. Peters*, 3 F.3d 1023, 1027 (7th Cir. 1993) ("[A] petitioner is not denied an opportunity for full and fair litigation of his claim if he fails to raise and to preserve the claim in state court.").

The state courts carefully and thoroughly analyzed the facts of Haywood's Fourth Amendment claim on post-conviction review and appeal. Specifically, in denying his post-conviction petition, the state trial court considered the process by which the warrant was issued, including, among other things, that Jackson had appeared before the judge, was available for questioning, and swore to the allegations in the complaint—

15

though it considered those facts in the context of Haywood's *Brady* claim. It concluded that even if the prosecution had disclosed the information it withheld, that information would not refute the presumed validity of the warrant. With respect to Haywood's contention that he was entitled to a *Franks* hearing, the trial court dismissed the petition on the grounds of *res judicata*.

For its part, the state appellate court on collateral review found that the *Franks* hearing issue was not barred by *res judicata*. *Haywood*, 2017 IL App (1st) 152028-U, ¶ 35. But it affirmed the trial court on other grounds, finding that Haywood's petition and the new evidence did not show that Lipsey knowingly included false information to support her search warrant or recklessly included false information in her warrant affidavit. *Id.* ¶¶ 35, 40, 42. In reaching this conclusion, it carefully and thoroughly analyzed the Fourth Amendment issue by considering the new evidence—i.e., Jackson's statements in the affidavit and questionnaire; how Jackson's appearance before the judge who issued the warrant gave that judge an opportunity to assess his credibility; and how the warrant affidavit outlined "the measures Lipsey took to corroborate the information allegedly provided by Jackson." *Id.* ¶ 40; *see also id.* ¶ 42.

To the extent Haywood contends that that the trial and appellate state courts failed to properly analyze the facts before them, that does not get him around *Stone*. A federal court's "task under *Stone*" is to decide not whether the state courts erred in assessing the facts but rather whether they committed errors "so grave as to indicate that [they] closed [their] ears and mind[s] to argument." *Miranda*, 394 F.3d at 999 (internal quotation marks and alterations omitted). And Haywood does not contend that the state courts did not apply the proper constitutional law to the facts, nor could he. In

sum, the Court concludes that the state courts gave Haywood a full and fair opportunity to litigate his Fourth Amendment claim on collateral review.

To the extent Haywood contends that the state courts did not give him a full and fair hearing on his Fourth Amendment claims at trial and on direct appeal, that contention also lacks merit. Both courts considered whether Haywood was entitled to a *Franks* hearing. The trial court based its decision to deny Haywood's motion for a *Franks* hearing on a careful and thorough assessment of the factual record before it. For example, in denying the *Franks* hearing, the court found that J. Doe's signature on the warrant complaint increased its reliability; the witnesses Haywood presented to challenge the warrant affidavit—himself, his brother, and the middleman involved in the drug transaction—were biased; and the information in their affidavits could be read as corroborating, rather than contradicting, the information that J. Doe gave to Officer Lipsey. Hr'g Tr. (dkt. no. 18-3) at 19:6–27:10 (trial court's order denying *Franks* hearing). The state appellate court carefully and thoroughly considered these facts as well. *Haywood*, 2014 IL App (1st) 121448-U, ¶ 28–31. Accordingly, the state courts gave Haywood an opportunity for a full and fair hearing of his motion for a *Franks* hearing, and *Stone* bars this court from reviewing the state courts' rulings. *See Miranda*, 394 F.3d at 999–1000.

In his reply brief, Haywood contends, citing *Manson v. Brathwaite*, 432 U.S. 98, 104 (1977), that the rule from *Stone* does not apply to his claims pertaining to his search warrant because they invoke his Fourteenth Amendment right to due process, not his Fourth Amendment rights. This argument misses the mark. *Manson* involved a defendant's due process rights with regard to the admissibility at trial of testimony about

a suggestive identification procedure, *see id.* at 102, 117, not the admissibility of evidence that was obtained by a search warrant issued after an identification procedure. Instead, Haywood's claims sound squarely in the Fourth Amendment; he challenges the admission at trial of evidence seized pursuant to an allegedly unconstitutional search or seizure. *See Stone*, 428 U.S. at 482–84 (describing the history and purpose of the exclusionary rule).

For these reasons, Haywood's Fourth Amendment claim cannot serve as the basis for federal habeas corpus relief.

## C. Ineffective assistance of counsel claim

Haywood also seeks habeas corpus relief on the basis that he received ineffective assistance from his appellate counsel. The same counsel represented him in his direct appeal and in his appeal from the denial of his post-conviction petition. Haywood contends that she was ineffective in both instances.

As an initial matter, Haywood did not raise his ineffective assistance of counsel claim before the state courts. But, as the Court explained earlier in this opinion, because respondent has not raised the procedural default defense with regard to that claim, he has waived or forfeited the defense. *See Kaczmarek*, 627 F.3d at 593; *Perruquet*, 390 F.3d at 517.

Turning to the merits of the ineffective assistance of counsel claim, the "ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings" is not a ground for habeas corpus relief, 28 U.S.C § 2254(i), as Haywood concedes in his reply brief. He contends, however, that the Court may review his claim that his post-conviction counsel provided ineffective assistance because he

18

has alleged, on the basis of newly discovered evidence, that he is innocent. Evidence
showing a petitioner's actual innocence can excuse procedural default. *E.g.*, *Thomas*,
822 F.3d at 386. But it does not provide an avenue around the statutory rule that
petitioners cannot bring claims alleging the ineffectiveness of their counsel in post-
conviction proceedings. Accordingly, even if Haywood put forth evidence showing his
actual innocence (which, as the Court explained earlier in this opinion, he has not), he
cannot challenge via his section 2254 petition the effectiveness of his counsel in his
post-conviction proceedings.

With regard to his direct appeal, Haywood argues that his counsel was ineffective
in how she dealt with Jackson's affidavit and questionnaire, which he obtained after the
trial. Haywood contends that he sent the affidavit and questionnaire to counsel while
his appeal was pending but that she failed to supplement the record or file a motion for
reconsideration before the trial court pertaining to the evidence. He also contends that
she failed to raise issues on appeal pertaining to the prosecution's nondisclosure of the
leniency deal between Lipsey and Jackson and the process by which Lipsey obtained
the search warrant; failed to review records relating to those issues; and failed to
challenge the trial court's denial of his motion for a *Franks* hearing.

"The Sixth and Fourteenth Amendments guarantee criminal defendants the
effective assistance of counsel during their first appeals as of right." *Reynolds*, 902
F.3d at 704. To prevail on his claims that he was denied effective assistance of counsel
in violation of the Sixth and Fourteenth Amendments, Haywood must show "(1) that the
attorney provided constitutionally deficient performance; and (2) that the deficient
performance prejudiced the defense." *Id.* (citing *Strickland v. Washington*, 466 U.S.

668, 687 (1984)).  To show counsel provided constitutionally deficient performance, Haywood "must show that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.  "Appellate ineffective-assistance claims require the reviewing court to look at the issue that appellate counsel failed to raise, and determine whether that issue was obvious and clearly stronger than issues that appellate counsel did raise."  *Walker v. Griffin*, 835 F.3d 705, 709 (7th Cir. 2016) (internal quotation marks omitted).

Haywood has not shown that his appellate counsel's performance was constitutionally deficient.  She acted reasonably in declining to supplement the appellate record with Jackson's affidavit and questionnaire.  Specifically, as counsel correctly explained to Haywood in a letter, the appellate court could consider only evidence that had been before the trial court, which was not the case for the affidavit and questionnaire.  *See, e.g.*, *People v. Nitz*, 219 Ill. 2d 400, 423, 848 N.E.2d 982, 997 (2006).  And even if counsel could have filed a motion for reconsideration before the trial court (an issue the Court need not address), it was objectively reasonable for her to make a "tactical decision[]" not to do so, particularly because Haywood could raise the evidence in his post-conviction petition.  *See Strickland*, 466 U.S. at 688 ("[T]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.").

Haywood's other arguments concerning his appellate counsel's ineffectiveness also lack merit.  For one, counsel could not have challenged the leniency deal between Lipsey and Jackson on appeal because the evidence of that deal was not in the record before the appellate court.  In addition, Haywood provides no support for his contention

20

that counsel failed to review the record or raise arguments pertaining to it. And though he contends that counsel failed to challenge the trial court's denial of his motion for a *Franks* hearing on appeal, she did challenge that decision, and the appellate court affirmed it. *Haywood*, 2014 IL App (1st) 121448-U, ¶ 32. Contrary to Haywood's contentions, counsel also challenged the process by which Lipsey obtained the search warrant based on the evidence properly in the record before the appellate court on direct appeal by asserting that Lipsey knowingly or with a reckless disregard for the truth included false information in the search warrant affidavit. In short, Haywood has not shown that his appellate counsel's performance was constitutionally deficient. Accordingly, his ineffective assistance of counsel claim lacks merit.

## D.    Forensic testing

Haywood finally contends that the trial court erred in dismissing his post-conviction motion for fingerprint and DNA testing of four packets of heroin recovered during the search of his home. This claim is based on state law and thus is not cognizable in a habeas corpus petition before a federal court. *See* 28 U.S.C. § 2254(a) (federal court can hear a habeas corpus petition "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States"); *see also, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Gartman v. Pierce*, No. 05 C 3123, 2012 WL 1932118, at *17 (N.D. Ill. May 29, 2012) (petitioner's claim that he was entitled to DNA testing under Illinois law was "noncognizable on federal habeas review because it raise[d] a question of purely state law").

Further, to the extent this claim raises federal-law issues, Haywood has procedurally defaulted it. To fairly present a federal claim to state courts and thereby avoid procedural default, Haywood must have, "in some manner, alert[ed] the state courts to the federal underpinnings of his claim." *Perruquet*, 390 F.3d at 519. In his post-conviction briefs before the state courts, Haywood did not rely on federal or state cases that engaged in constitutional analysis; he did not frame "the claim in terms so particular as to call to mind a specific constitutional right"; and he did not allege "a pattern of facts that is well within the mainstream of constitutional litigation." *See id.* at 519–20 (listing factors courts consider in deciding whether a petitioner procedurally defaulted a federal claim); *see also Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 70 (2009) (states constitutionally can limit the availability of DNA testing provided to people who have been convicted of crimes). Instead, Haywood relied entirely on state law and state court decisions applying state law. He has not argued that he can show cause and prejudice excusing his failure to raise federal-law issues relating to his forensic testing claim, and, for the reasons previously explained, he cannot argue that the failure to consider the claim on its merits would result in a miscarriage of justice.

In short, Haywood has not demonstrated that he is entitled to federal habeas corpus relief on the basis of his claim for forensic testing.

### Conclusion

For the foregoing reasons, the Court directs the Clerk to enter judgment denying Christopher Haywood's motion under 28 U.S.C. § 2254 [dkt. no. 1, 7]. The Court declines to issue a certificate of appealability under 28 U.S.C. § 2253(c), because

reasonable jurists would not find the Court's procedural default or merits rulings to be debatable.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  May 26, 2020